344

# CIRCUIT COURT OF PRINCE WILLIAM COUNTY

Shannon Elkins,
Personal Representative
of the Estate of
Jessica Ashley Dudley,
deceased

 v.

Erie Insurance Exchange et al.

December 22, 2008

Case No. CL69629

BY JUDGE ROSSIE D. ALSTON, JR.

 This declaratory judgment action was heard by the Court on October 27-28, 2008. After the testimony of witnesses and after considering the argument of counsel, this Court took the matter under advisement and allowed the parties to submit supplemental briefs for the Court's consideration. While the core issue in this matter is not a matter of first impression in Virginia, the factual predicate for resolving this issue presents very compelling circumstances.

 There is no question that the circumstances of this case are tragic; a young woman lost her life in a motorcycle accident. The issue before the Court is not whether Miss Jessica Dudley's death is compensable, but whether Erie Insurance Exchange ("Erie") should be held responsible for providing compensation to Miss Dudley's estate. Specifically, this Court is to determine whether the Erie Pioneer Business Auto Policy # Q-04-140395 purchased by Simpson Unlimited covered not only Simpson Unlimited employees, but Simpson Unlimited's owner's family.

Accordingly, in this litigation, the Court must determine if the insurance policy contained ambiguous definitions pertaining to whom the policy insured or whether the terms of this policy were capable of more than one interpretation. If the terms of the insurance policy are in fact ambiguous, the Court must then determine whether Erie is obligated to provide Uninsured/Underinsured Motorist benefits to Plaintiff's decedent, Jessica Dudley.

*Facts*

In early 2002, Simpson Unlimited, Inc. ("Simpson Unlimited"), a company specializing in roof replacement and restoration, was seeking proposals for a new insurance policy for its fleet of vehicles. Simpson Unlimited's Comptroller (later "Chief Financial Officer"), James Dooley, was responsible for obtaining the new insurance policy. When contacting potential insurance companies, Mr. Dooley provided the insurance agents with a copy of the declaration pages issued by Simpson Unlimited's previous insurer, CNA Insurance Company, loss runs, and a list of commercial vehicles and drivers to be covered. Mr. Dooley provided Patrick Sullivan, President of Preferred Insurance Services, these documents, and Mr. Sullivan subsequently contacted the "quote unit" at Erie Insurance Exchange. After the quote unit provided Mr. Sullivan with the premium charges for the various vehicle coverages that Simpson Unlimited requested, Mr. Sullivan prepared a specific coverage proposal, which Mr. Dooley accepted on behalf of Simpson Unlimited.

Erie required Simpson Unlimited to complete a written ACORD application after coverage was bound by the acceptance of Mr. Dooley. This was done on April 8, 2002. The signed application forms certified the precise and exact coverages anticipated and the vehicles for which Simpson Unlimited wished to contract. On May 23, 2002, an Erie agent sent Mr. Dooley a subscriber agreement to add the named insured, Simpson of Maryland. Mr. Dooley, as Chief Financial Officer, signed the agreement on the signature line, which contained the word "Subscriber." Five days later, on May 28, 2002, Mr. Sullivan completed a Commercial Automobile Supplemental Questions form, which stated that at least one of the corporate officers or partners of Simpson Unlimited drove a company vehicle for personal use and did not have a personal auto insurance policy. The Erie Pioneer Business Policy and Declarations were printed on June 3, 2002, and Mr. Sullivan met with Mr. Dooley a few weeks later to review the policy.

The Simpson Unlimited insurance proposal included a "drive other car endorsement" (a/k/a "Drive Other Car Coverage"), which was built into the Erie contract through its "Policy Change Endorsement (Virginia only)." The Policy Change Endorsement provided that Simpson Unlimited's "active executive officer and spouse" were covered with ("Uninsured/Underinsured Motorist") UM/UIM coverage, but made no mention of the active executive officer's family members. The UM/UIM had the Virginia-mandated UM/UIM endorsement in a form approved the State Corporation Commission. *See* Va. Code Ann. §§ 38.2-317, 38.2-2206.

On July 20, 2003, Jessica Ashley Dudley, the minor daughter of Greg Simpson, died as a result of a motorcycle/motor vehicle accident. She was the passenger on a motorcycle operated by her stepfather. Miss Dudley and her stepfather were traveling on a social call. When she died, Miss Dudley was seventeen years old, and she was not an employee of Simpson Unlimited. About nine months later, Mr. Simpson filed a UIM claim with Erie on behalf of his daughter's estate. This claim was denied by Erie.

The instant lawsuit seeks a declaratory judgment that Erie is obligated to provide under-insured motorist coverage to the estate of Miss Dudley.

*Analysis*

There is well-settled case law regarding the interpretation of contracts in general and insurance policies specifically. The court's function is to construe the "intention of the contracting parties *as expressed by them in the words they have used.* . . . It is the court's duty to declare what the *instrument itself* says it says." *Ames v. American Nat'l Bank,* 163 Va. 1, 38 (1934) (citing *Richmond Eng'g & Mfg. Corp. v. Loth,* 135 Va. 110, 140-41 (1923)) (emphasis in the original). "The contract is to be construed as a whole, and effect given to every provision thereof if possible." *Id.* at 38-39. "An ambiguity, if one exists, must be found on the face of the policy. And, language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time. Finally, doubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it." *American Reliance Ins. Co. v. Mitchell,* 238 Va. 543, 547 (1989) (internal citations omitted).

In the instant case, the dispute is whether the UM/UIM Virginia Motorists Coverage Endorsement provides for coverage of Miss Dudley, as a family member of Gregory Simpson, owner of Simpson Unlimited. The Plaintiff asserts that Erie's built in broad form "Drive Other Car Coverage"

provides UM/UIM coverage to Miss Dudley, or alternatively, that the policy is ambiguous such that it should be construed in favor of the insured. The Defendants maintain that the clear language of the policy excludes Miss Dudley from coverage.

Upon a review of the "Certified Insurance Policy with Declarations Page" and "Adding Additional Corporation and Subscriber Agreement," it is the Court's conclusion that the contract is not ambiguous on the face of the policy and that Miss Dudley was not covered by the Simpson Unlimited/Erie contract. It is clear that Simpson Unlimited, the corporation, is the named insured in the policy. Mr. Dooley, as Chief Financial Officer of Simpson Unlimited, signed the Subscriber Agreement, and Item 1 of the Declarations Page lists "Simpson Unlimited, Inc.," as the named insured.

The Plaintiff contends that UM/UIM endorsement, stating that "anyone we protect" includes "you, or any family member," provides coverage to Mr. Simpson and his family. The Court disagrees with this contention. Reading the policy as a whole, the Court holds that the "you" in the UM/UIM endorsement is the named insured, *Simpson Unlimited*. There is no ambiguity in the contract on its face. Accordingly, the Court will not consider parol evidence regarding the understanding of Mr. Simpson or discussions between Simpson Unlimited's agents and Erie agents. The Court also need not consider the Supplemental Questions Form.

While the Supreme Court of Virginia has not addressed the issue as to whether the inclusion of the "family member" in a UM/UIM mandatory endorsement renders a commercial vehicle policy ambiguous, the vast majority of other jurisdictions has found that it does not. *See, e.g., American Econ. Ins. Co. v. Bogdahn*, 89 P.3d 1051 (Ok. 2004) (the court agrees with the "vast" majority of jurisdictions and rejects the notion that the use of the term "family member" in a commercial automobile policy renders the policy ambiguous); *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455 (Tex. 1997) (finding that the inclusion of "any family member" in the UM/UIM endorsement did not create an ambiguity when the named insured was a corporation); *Huebner v. MSI Ins. Co.*, 506 N.W.2d 438, 441 (Iowa 1993) (finding that "you or any family member" in the UM/UIM provision of a policy issued to a corporation was unambiguous and merely indicated that the policy was "written so as to be marketable to either individual proprietorships or to corporations"); *Cutter v. Maine Bonding & Cas. Co.*, 579 A.2d 804, 806-07 (N.H. 1990) (finding that there was no ambiguity when "any family member" was included in the UM/UIM provision of a policy issued to a corporation and agreeing with the "clear majority of [its] sister States" that "family member" is either "superfluous or null and void when the named

348

insured is a corporate entity and not an individual"). While not binding authority, this Court finds that the analytical framework in these cited cases support the conclusion that the Commercial Automobile Insurance Policy which is the subject of this litigation is not ambiguous.

For the foregoing reasons, the Court finds that there was no ambiguity in the policy and that policy did not provide for the coverage of Miss Dudley.